IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| AVERILL BRITTENUM and ARMITTIA BRITTENUM,<br><br>    Plaintiffs,<br><br>v.<br><br>U.S. BANK, NA, AS TRUSTEE FOR STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-BC4; PHH MORTGAGE CORPORATION, and WILSON & ASSOCIATES, P.L.L.C.,<br><br>    Defendants. | ）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>） | No. 2:23-cv-02125-BCL-cgc |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant U.S. Bank, NA, as Trustee for Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2007- BC4 ("U.S. Bank") and PHH Mortgage Corporation's ("PHH," and with U.S. Bank, the "PHH Defendants") Motion for Summary Judgment. Doc. 26.[1] For the following reasons, Defendant's Motion is **GRANTED**.

## BACKGROUND

On or about October 28, 2004, the Brittenums executed an adjustable-rate note (the "Note"), a warranty Deed, and a Deed of Trust, and other related documents (the "Loan

---

[1] This case was originally assigned to Judge Mark Norris when it was filed in March 2023. Doc.2. Judge Norris transferred the case to the undersigned in March 2026. Doc. 29.

Documents") for property located at 5261 Charlotte Oaks Cove, Arlington, Tennessee 38002. Doc. 33-1 at 1. Around 2019, PHH began servicing the Brittenums' mortgage. Doc. 33-1 at 2.

The Deed of Trust states that PHH may:

return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current, without waiver to its rights or of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future.

*Id*. Since PHH began servicing the loan, there have been several disputes about the status of the loan and whether payments were tendered by the Petitioners or received by PHH. Doc. 35 at 2-3. Disputes about the status of payments led the Brittenums to submit their monthly mortgage payments through a service called MoneyGram to have clearer documentation of payment history. *Id*. at 3. PHH threatened foreclosure on numerous occasions since it began to service the loan. *Id*.

Originally, the Brittenums' promissory note was an adjustable-rate note, allowing their interest rate to fluctuate up to 13.49%. Doc. 33-1 at 2 The Brittenums agreed to modify their mortgage at least three times between 2009 and 2021. *Id*. The Brittenums' monthly payment was $1,252.00 effective April 28, 2009. *Id*. On October 7, 2021, the Brittenums entered into a modification agreement ("Modification Agreement"). *Id*. at 3. As of November 1, 2021, the Brittenums' monthly payment was $1,772.86. *Id*. Their overall indebtedness increased with each modification, rising from $213,780.00 to $316,583.28, and their modifications resulted in balloon payment obligations. *Id*.

In January 2023, PHH referred the Brittenums' mortgage for foreclosure. Doc. 35 at 4. On or around January 27, 2023, the Brittenums received correspondence from Wilson & Associates that included a Notice of Sale advertising a foreclosure sale of the Property to be held on February 23, 2023. *Id*. The Brittenums attempted to show PHH that they were not in default on their mortgage payments and asked them to cancel or postpone the scheduled sale. Doc. 35 at 4. PHH

representatives scheduled meetings to discuss the issue or negotiate another loan modification, apparently hoping to delay the Petitioners from initiating an action to enjoin the scheduled foreclosure sale; however, they did not follow through with any of the scheduled meetings. *Id*. at 4-5.

On or around February 15, 2023, Wilson & Associates recorded notice that it was acting as the substitute trustee for the PHH Defendants. Doc. 33-1 at 4. Wilson & Associates recorded notice of substitution states:

> Whereas, in the even [sic] this Substitution of Trustee has not been recorded prior to the first date of publication as required by T.C.A. 35-5-101 et seq, then the undersigned owner does hereby declare that it did appoint the Substitute Trustee prior to the first notice of publication and does hereby ratify and confirm all actions taken by the Substitute Trustee subsequent to said date of substitution but prior to the recording of this substitution . . . .

*Id*. at 3-4.

The only facts disputed by Plaintiff are how balloon payments are to be characterized, what amount was owed as of October 18, 2021, whether certain payments were missed, and in what amount Plaintiffs were behind on their mortgage payments as of November 16, 2022. *Id*. at 3-4.

The PHH Defendants move for Summary Judgment on the bases that (1) Plaintiffs have failed to identify a breach of the Deed of Trust, (2) Plaintiffs' allegation that their equity has diminished is not a colorable legal claim, and (3) Tennessee Code Annotated § 35-5-101 expressly allows a substitute to ratify its prior actions. Doc. 26 at 2. Plaintiffs filed their Response on April 13, 2026. Doc. 33-1. Defendant filed a Reply on April 27, 2026. Docs. 34, 35.

## **LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When the moving party has carried its burden…its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." *Feagin v. Mansfield Police Dep't*, 155 F.4th 595, 612 (6th Cir. 2025). "Blanket denials of a defendant's evidence are 'not enough' to create a genuine issue of material fact." *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

In deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Id.* Courts do not make credibility determinations or weigh the evidence when deciding a motion for summary judgment.  *See Martinez v. Cracker Barrell Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013).

## LEGAL ANALYSIS

### I.    Breach of Contract

Defendants first argue that they did not breach the Deed of Trust and therefore Plaintiffs' breach of contract claim must be dismissed. Doc. 27 at 5-6. Defendants assert that the Deed of Trust explicitly allowed them to "return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current." *Id*. at 6. Because the Brittenums were behind

4

on their mortgage payments in November 2022, PHH was entitled to reject the Brittenums' regular monthly payments. *Id.*

In response, Plaintiffs do not contest the existence of the Deed of Trust, or that it expressly allowed PHH to reject payments. Doc. 33 at 8-14. The parties dispute the amount of the loan but not that there is an outstanding loan.  More important, there appears to be no dispute that it was past due at the time of the rejected payments. Plaintiffs at one point state in passing that "there does seem to be a clear factual dispute about the existence of a default that would justify the foreclosure initiated by PHH," but they don't actually develop the point, instead stating—in a seeming concession that the loan was past due—that "Petitioners do not want to turn this argument into a mechanical debate about payments made, made late, or missed over a twenty-two-year loan history at the expense of their arguments about breach of the covenant of good faith and fair dealing and the unconscionability of the initial loan and subsequent modifications." Doc. 33 at 5; *see also id. at* 9-15 (basing entire response to breach of contract argument on covenant of good faith and fair dealing).

The Court will respect Plaintiffs' litigating decision and proceed accordingly. Because the parties agree that the loan is still outstanding, with a past due balance, and it is undisputed that the Deed of Trust allowed PHH to reject payments that did not bring the loan current, there is no breach. Insomuch as a breach of contract claim was pled related to the rejection of the November 2022 and January 2023 payments. this claim fails as a matter of law.

## II.    Covenant of Good Faith and Fair Dealing

Plaintiffs also claim that Defendants breached the covenant of good faith and fair dealing. Doc. 33 at 8-14. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Dick Broad. Co. of Tennessee v. Oak Ridge FM, Inc.*, 395

S.W.3d 653, 661 (Tenn. 2013) (quotation marks and citation omitted). Tennessee courts have consistently applied this principle. *Id*. It does not "create additional contractual rights or obligations, and it cannot be used to avoid or alter the terms of an agreement." *Jackson v. CitiMortgage, Inc.*, No. W201600701COAR3CV, 2017 WL 2365007, at *9 (Tenn. Ct. App. May 31, 2017).

"The common law duty of good faith in the performance of a contract does not apply to the formation of a contract." *Forrest v. Trousdale Cnty. Bd. of Educ.*, 954 F. Supp. 2d 720, 730 (M.D. Tenn. 2013); *Restatement (Second) of Contracts* § 205 cmt. c(1981)) ("This section… does not deal with good faith in the formation of a contract."). "Consequently, the common law duty of good faith does not extend beyond the agreed upon terms of the contract and the reasonable contractual expectations of the parties." *Wallace v. Nat'l Bank of Com.*, 938 S.W.2d 684, 687 (Tenn. 1996). Rather, "a claim based on the implied covenant of good faith and fair dealing is not a stand alone claim; [] it is part of an overall breach of contract claim." *Cadence Bank, N.A. v. The Alpha Tr.*, 473 S.W.3d 756, 773 (Tenn. Ct. App. 2015). "As such, it is clear that the covenant does not provide an independent basis for relief." *Jones v. BAC Home Loans Servicing, LP*, No. W201600717COAR3CV, 2017 WL 2972218, at *7 (Tenn. Ct. App. July 12, 2017).

The Plaintiffs' claim as it relates to the breach of the covenant of good faith and fair dealing is that the modifications were a bad deal that imposed payment obligations Plaintiffs ultimately could not meet: "The modifications offered to the Brittenums since the first change date did permit them to stay in their home longer, but apparently with indifference to their ability to ever own their home without a mortgage." Doc. 33 at 11. Plaintiffs assert that they entered into loan modifications that created "balloon notes," which put them further in debt and created a loan they could never

pay off. *Id*. at 12. Plaintiffs state they agreed to these modifications without understanding the terms to avoid losing their home. *Id*. at 14.

The initial inducement into the adjustable-rate mortgage loan and the subsequent loan modification agreements are pre-contractual. Plaintiffs state, "[t]he Brittenums did not understand the complexity of the modification proposal …" Doc. 33 at 14. They also point to the "ambiguity of the language of the modification agreement," stating it was "misleading," and "unclear." *Id*. at 13. Inducement into accepting the loan modification agreements based on vague terms during the formation of a contract is not actionable under good faith and fair dealing. Instead, Plaintiffs must point to a breach of the covenant by Defendants during the *performance* or *enforcement* of the contract. *See Restatement (Second) of Contracts* § 205 (1981); *see also Cadence Bank, N.A. v. The Alpha Tr.*, 473 S.W.3d 756, 771 (Tenn. Ct. App. 2015) (granting summary judgment where "Appellants pointed to no specific provision in the written contract that Cadence Bank failed to perform in good faith."); *see also Wallace*, 938 S.W.2d at 687 ("Performance of a contract according to its terms cannot be characterized as bad faith.").

Even if the Complaint and Plaintiffs' Response could be construed to claim a breach of good faith and fair dealing in the enforcement of the contract by initiating foreclosure proceedings, their claim would still fail. Exercising contractual rights is not indicative of a breach of good faith. *See Jackson v. CitiMortgage, Inc.*, No. W201600701COAR3CV, 2017 WL 2365007, at *10 (Tenn. Ct. App. May 31, 2017) (holding that because the lender had the contractual right to foreclose upon default, its decision to do so rather than approve a loan modification did not violate the implied covenant of good faith and fair dealing).

In this case, Plaintiffs have not identified any failure by Defendants to perform or enforce the loan modification agreements in good faith. Instead, their argument appears to be that they were induced into the modifications by unclear terms and the fear of losing their home.

Fraud and duress are more appropriate vehicles to bring claims of bad faith in bargaining. *Stamps v. Stamps*, No. M2012-02512-COA-R3CV, 2013 WL 6795411, at *2 (Tenn. Ct. App. Dec. 19, 2013). However, even under a strained reading of the Complaint and Response, Plaintiffs have not attempted a cause of action under either theory. Plaintiffs have not pled fraud with the necessary particularity pursuant to Federal Rule of Civil Procedure 9 ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Nor have they pled facts establishing that Defendants committed an unlawful act that induced them to make a contract which deprived Plaintiffs of free will. *Cummings Inc. v. Dorgan*, 320 S.W.3d 316, 332 (Tenn. Ct. App. 2009); *see also Cumberland & Ohio Co. of Texas v. First Am. Nat. Bank*, 936 F.2d 846, 850 (6th Cir. 1991) ("In Tennessee, a party who chose to perform under a written agreement for nearly two years was found to have ratified it and was estopped from claiming economic duress to avoid the agreement's terms.").

For these reasons, Plaintiffs' claims arising under a breach of the covenant of good faith and fair dealing fail as a matter of law.

### III.   Unconscionability

The crux of Plaintiffs' claim is that the agreements are unconscionable. Unlike the covenant of good faith and fair dealing, unconscionability addresses impropriety during contract *formation*. *Vintage Health Res., Inc. v. Guiangan*, 309 S.W.3d 448, 461 (Tenn. Ct. App. 2009). "A contract will be found to be unconscionable only when the 'inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no

8

reasonable person would make them on one hand, and no honest and fair person would accept them on the other.'" *Philpot v. Tennessee Health Mgmt., Inc.*, 279 S.W.3d 573, 579 (Tenn. Ct. App. 2007). "The determination of whether a contract or a contractual provision is unconscionable is a question of law." *Vintage Health Res., Inc.*, 309 S.W.3d at 461.

"The unconscionability analysis can be broken down into two component parts: (1) procedural unconscionability, which is an absence of the meaningful choice on the part of one of the parties and (2) substantive unconscionability, which refers to contract terms which are unreasonably favorable to the other party." *Wofford v. M.J. Edwards & Sons Funeral Home Inc*, 490 S.W.3d 800, 818 (Tenn. Ct. App. 2015).

### a. Procedural Unconscionability

"[W]hether a contract is [procedurally] unconscionable is determined based on the circumstances as they existed at the time the parties executed the contract." *Gebhardt v. GMAC Mortg., LLC*, No. 3:09-CV-425, 2010 WL 2901823, at *4 (E.D. Tenn. July 21, 2010). Courts look for evidence of the contract formation process, including bargaining power, other available options, and transparency. *Vintage Health Res., Inc.*, 309 S.W.3d at 461-63; *see also Haun v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984).

Defendants argue that "mortgage servicers, like PHH, only propose a modification agreement when a borrower has demonstrated that they are unable to afford their monthly payment." Doc. 27 at 7. Defendants assert that Plaintiffs had "multiple options: (1) they [could] attempt to sell the home on their own; (2) they [could] enter into a modification agreement; or (3) they [could] often negotiate a 'deed in lieu of foreclosure' agreement where they avoid a foreclosure in exchange for a cash payment." Doc. 27 at 7.

9

Plaintiffs counter that they had no meaningful choice when it came to accepting the loan modifications. Doc. 33 at 16. Plaintiffs wanted to remain in their home, and they had already "paid in excess of $250,000 on the note over a fifteen-year period." *Id*. Because Plaintiffs "wanted to keep their home after investing so much in it," they argue they had no choice but to agree to the loan modifications. *Id*. They also reassert that they did not understand the consequences of the terms in the agreements. *Id*. Plaintiffs seem to be arguing that the contract was procedurally unconscionable because Defendants threatened them with foreclosure, causing them to accept unclear terms.

First, "[a] party is presumed to know the contents of a contract he has signed." *Philpot v. Tennessee Health Mgmt., Inc.*, 279 S.W.3d 573, 581 (Tenn. Ct. App. 2007). "The law imparts a duty on parties to a contract to learn the contents and stipulations of a contract before signing it, and signing it without learning such information is at the party's own peril." *Id*.; *see also Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993) (internal citation omitted) ("It will not do, for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained.").

In reviewing the loan modification agreements signed by Plaintiffs in February 2009 (Doc. 26-5), November 2010 (Doc. 26-6), and October 2021 (Doc. 26-7), each agreement identifies that a "balloon payment" will come due at a date certain. Each agreement also identifies the annual rate of interest charged on the unpaid principal balance of the loan. In the operative agreement, the first line, written in bold, underlined, capital letters, states:

> **THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $196,136.16, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

Doc. 26-7.

To the degree Plaintiffs believed these agreements are unclear, there is no evidence put forth that indicates they were unable to inquire about "whether interest would accrue on the balloon amount under the original adjustable rate note." Doc. 33 at 12. No evidence in the record shows Defendants lied about the terms, attempted to bury material provisions, or rushed Plaintiffs into signing without time to review. The record does show that Plaintiffs signed three similar agreements without ever seeking clarification.

To the extent Plaintiffs argue that they had to sign despite their confusion due to the threat of foreclosure, this argument also fails. Again, there is no evidence in the record that shows Defendants acted unconscionably during the formation. Defendants point out several options Plaintiffs rejected in favor of the loan modifications. *See Taylor*, 142 S.W.3d at 286. While all of the choices might have been unpalatable—particularly the choice to seek more affordable housing—unconscionability describes a lack of "meaningful choice," not a lack of preferred choice. Just because Plaintiffs preference was to remain in their home does not mean they did not have options.

"Threatening foreclosure" is not sufficient to establish procedural unconscionability because it is a legal right pursuant to the contract. An understanding to the contrary would establish unconscionability each time a loan modification resulted from a pending foreclosure. Defendants exercising their contractual right is not unconscionable.

A claim of procedural unconscionability fails as a matter of law on this record.

### b. Substantive Unconscionability

"A contract is substantively unconscionable when its terms 'are beyond the reasonable expectations of an ordinary person, or oppressive....'" *Gebhardt v. GMAC Mortg., LLC*, No. 3:09-

CV-425, 2010 WL 2901823, at *3 (E.D. Tenn. July 21, 2010). Plaintiffs' main assertion is that the terms of the modification agreements are unconscionable because the balloon payment in the operative loan modification agreement is $196, 136.16 – only $17,000 less than their original loan amount. 33 at 17. [2]

Defendants argue that the modification agreements did not contain unreasonably favorable terms for PHH or U.S. Bank. Doc. 27 at 7. Instead, they point out that while the Plaintiffs increased their overall indebtedness, they had the benefit of remaining in their home. *Id*. In the alternative, the property would have been foreclosed as is Defendants' right under the agreement. *Id*.

The agreement is neither manifestly one-sided nor unfair. Plaintiffs received the benefit of their bargain by securing reduced monthly payments and remaining in their home. Doc. 27 at 6. The fact the bargain was perhaps a "bad deal" is not sufficient to rise to the level of unconscionability. *See Forsythe v. BancBoston Mortg. Corp.*, 135 F.3d 1069, 1074 (6th Cir. 1997) (finding no unconscionability despite mortgage increases where the lender reduced the amount due, waived past due payments, and dismissed a forfeiture action to allow the borrower to remain in her home).

Furthermore, "terms that are common in the industry are generally not unconscionable." *Wofford*, 490 S.W.3d at 818.  Defendants assert that balloon payments are a common and lawful feature of mortgage modifications. Doc. 27 at 7. While Plaintiffs describe the loan structure as "predatory," they do not rebut that these types of notes are standard in the industry.

For these reasons Plaintiffs' claim of unconscionability fails as a matter of law.

---

[2] Plaintiffs also argue in passing that the initial adjustable-rate mortgage was unconscionable because they could only afford the initial rate. Doc. 33 at 15. Plaintiffs have forfeited this argument by failing to develop it. *Id*. at 15-18. And, in any event, a borrower's agreement to a loan that turns out to be a bad deal does not amount to a showing of unconscionability. *See Forsythe*, 135 F.3d at 1074.

**IV.      Tennessee Code Annotated § 35-5-101 and Fair Debt Collection Practices Act**

Defendants next argue that Wilson & Associates were authorized to act under Tennessee law. Doc. 27 at 8. Plaintiffs concede this point. Doc. 33 at 19 ("That issue is largely moot at this point, and the Plaintiffs will not argue in opposition.").

Plaintiffs go on to state that "[n]onetheless, the Plaintiffs assert they were not given notice of their right to contest the validity and amount of the debt asserted within thirty days of the notice under the Fair Debt Collection Practices ("FDCPA")". *Id*. In their Complaint, Plaintiffs sought "damages against Wilson & Associates for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*." Doc. 1-2 at 8. However, in their Response, Plaintiffs state they have "raised no claims for damages against Wilson & Associates." Doc. 33 at 19. In their Reply, Defendants read this to mean that Plaintiffs have conceded their FDCPA claims.

The Court agrees. Defendants are therefore entitled to judgment on any claims arising under Tennessee Code Annotated § 35-5-101 or FDCPA.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgments is **GRANTED**. The Court will enter a separate judgment. The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED**, this 18th day of May, 2026.

*Brian C. Lea*
BRIAN C. LEA
UNITED STATES DISTRICT JUDGE

13